IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KIM D. BROWN,** | Case Number 1:15 CV 1673 |
| Petitioner, | Judge John R. Adams |
| v. | Magistrate Judge James R. Knepp, II |
| **MICHELE MILLER, WARDEN,** | |
| Respondent. | REPORT AND RECOMENDATION |

### INTRODUCTION

*Pro se* Petitioner Kim Brown ("Petitioner"), a prisoner in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition"). (Doc. 1). Respondent Warden Michele Miller ("Respondent") filed a Return of Writ (Doc. 9) with attached exhibits, and Petitioner filed a Reply (Doc. 11). The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated August 26, 2015). For the reasons discussed below, the undersigned recommends the Petition be denied.

### FACTUAL BACKGROUND

Factual findings of state courts of appeals are presumed correct unless a petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied,* 527 U.S. 1040 (1999). The Fifth District Court of Appeals, Stark County, made the following findings of fact:

> During the late hours of November 1, 2013, Brown was at a home in Alliance, Ohio. T.L. arrived at the home and shortly thereafter, T.L. and Brown left in T.L.'s van. According to T.L.'s testimony, her friend asked her to drive Brown to his friend's house. T.L. agreed and she and Brown

drove around Alliance looking for his friend. They stopped at three locations. T.L. waited in the van while Brown looked for his friend.

At the last location, Brown asked T.L. if she wanted to come into the house instead of waiting in the van. T.L. agreed and she followed Brown, entering the house by walking down outside steps that led to a basement. It was dark inside the house and T.L. realized the house was abandoned. The floor of the basement was littered with trash. A dirty mattress lay on the center of the basement floor.

T.L. testified she went to leave and Brown asked her for a hug. T.L. said no and Brown grabbed her into a bear hug. T.L. asked him to get off her. He reached down and grabbed her butt and she tried to wrestle him off her. She testified Brown pulled a kitchen knife out of his back pocket and held it to her throat. When he pulled the knife out, Brown told her not to make him use it. He wanted to have oral sex for a half hour, smoke crack, and get high. T.L. pulled her cell phone out of the pocket of her hoody. She stated that she was able to hold the phone behind his back while Brown held her in a bear hug. She dialed 9–1–1.

After she dialed 9–1–1, T.L. said Brown tried to push her down on the mattress. He got on top of her and tried to put her legs down. He put his hand over her mouth and nose because she kept telling him to get off her. It made it difficult for her to breathe. He kept telling her he had the knife and not to make him use it.

While he was straddling her, she saw her phone and moved it so Brown could not see that she had dialed 9–1–1. Brown saw her move the phone and he took it out of her hand. He put her cell phone in his back pocket.

The 9–1–1 call center received an "open call" from a female. The call was traced to an address in Alliance, Ohio. Two patrol officers with the City of Alliance Police Department were dispatched in response to the 9–1–1 call. Patrol Officer John Capper and Patrol Officer Donald Bartolet reported to the address and walked around the house with their flashlights. The officers were wearing a "point of view" camera that recorded the incidents that occurred that night. The recording was downloaded and provided to the State of Ohio. The recording was played for the jury and entered as State's Exhibit 1.

T.L. saw the flashlights and yelled. The police officers heard T.L. call from the basement of the house and responded to her. The officers proceeded down the steps to the basement. As they entered the basement, they witnessed Brown laying on top of T.L. Officer Capper drew his pistol and Officer Bartolet drew his taser out. They yelled to Brown to get off the girl and to show his hands. Brown jumped up and began to run out of the basement. Officer Bartolet deployed the taser and hit Brown, but Brown was able to escape up the basement stairs. Officer Capper followed Brown

2

through the home, jumping out of window, where he found Officer Bartolet subduing Brown outside. Brown was handcuffed and given his Miranda rights. Brown was searched and the search revealed a kitchen knife, the cell phone belonging to T.L., and a change purse that contained crack cocaine and marijuana.

Brown was taken to the hospital and later interviewed by the officers, which was recorded on the point of view camera. The recording of the interview was played for the jury. During the interview, Brown said he and T.L. were in the basement to get high and to exchange oral sex for drugs. Brown ran from the officers in the basement because he had drugs on him. Officer Capper asked why he had T.L.'s cell phone in his pocket. Brown answered that he had been in possession of her cell phone from the time T.L. and Brown were driving together in T.L.'s van.

After the State rested, counsel for Brown moved for a dismissal based on Crim.R. 29. In the motion, Brown asked the trial court to dismiss the repeat offender violation specifications because the State rested its case without presenting evidence to allow the trial court to make a finding as to prior convictions. The trial court overruled the motion. The defense rested its case.

The jury found Brown guilty of the charges in the indictment.

The trial court held the sentencing hearing on May 15, 2014. The State submitted Exhibits 14 and 15 to the trial court, which showed Brown was convicted in the Stark County Court of Common Pleas. He was convicted of two offenses, both felonies of violence that were first or second degree. The defense renewed its objection made during the Crim.R. 29 motion. Based on the evidence presented, the trial court found Brown guilty beyond a reasonable doubt of the repeat offender violation specifications and that Brown was a repeat violent offender pursuant to R.C. 2929.01.

The trial court proceeded with sentencing. It determined the offense of attempting to commit rape and the offense of kidnapping were allied offenses and merged as a matter of law. The State elected to have Brown sentenced under the attempted rape offense.

The trial court sentenced Brown as follows: eight years for the attempt to commit the offense of rape; eight years for felonious assault; eleven years for aggravated robbery; and twelve months for possession of cocaine. The trial court ordered the sentences to run consecutively pursuant to the factors of R.C. 2929.14(C)(4) for a total sentence of 28 years. The trial court found that the available sentences for each offense were sufficient to punish Brown and to protect the public; therefore, the trial court did not impose a sentence with respect to the repeat violent offender specifications.

(Doc. 9, Ex. 9 at 2-6) (internal citations omitted).

**PROCEDURAL BACKGROUND**

The procedural history was accurately summarized in Respondent's brief; therefore, it is incorporated herein with only minor changes. (Doc. 9, at 4-6).

*Trial Court*

Petitioner was indicted by the November 2013 term of the Stark County Court of Common Pleas Grand Jury on one count of attempt to commit rape, with a repeat violent offender specification, one count of felonious assault, with a repeat violent offender specification, one count of kidnapping, with a sexual motivation specification, one count of aggravated robbery, with repeat violent offender specification, and one count of possession of cocaine. (Doc. 9, Ex. 1). Upon arraignment, Petitioner pleaded not guilty. (Doc. 9, Ex. 2).

Following a two-day jury trial, Petitioner was found guilty as charged in the indictment. (Doc. 9, Ex. 3). In an entry filed May 21, 2014, the court imposed an aggregate sentence of 28 years in prison. (Doc. 9, Ex. 3). The court also determined Petitioner to be a Tier III sex offender. (Doc. 9, Ex. 4). On June 5, 2014, the court entered a *nunc pro tunc* entry, again sentencing Petitioner to 28 years in prison. (Doc. 9, Ex. 5).

On October 31, 2014, the Court of Common Pleas issued a second *nunc pro tunc* entry, again sentencing Petitioner to 28 years in prison. (Doc. 9, Ex. 14).

*Direct Appeal*

Represented by counsel, Petitioner appealed to the Fifth District Court of Appeals on June 6, 2014. (Doc. 9, Ex. 6). He raised two assignments of error:

1. Appellant's conviction was against the manifest weight and sufficiency of the evidence.

2. The trial court erred in convicting the appellant of the repeat violent offender specification with evidence erroneously admitted after the State of Ohio rested its' [sic] case.

(Doc. 9, Ex. 7). The State filed a response brief. (Doc. 9, Ex. 8). On March 16, 2015, the Court of Appeals affirmed the judgment. (Doc. 9, Ex. 9).

On April 30, 2015, Petitioner, *pro se*, filed a notice of appeal with the Ohio Supreme Court. (Doc. 9, Ex. 10). In his Memorandum in Support of Jurisdiction, Petitioner raised the same two grounds for relief as he had in the appellate court. (Doc. 9, Ex. 11). The State filed a waiver of memorandum in response. (Doc. 9, Ex. 12). On July 8, 2015, the Ohio Supreme Court declined to accept jurisdiction on the appeal pursuant to S.Ct. Prac. Rule 7.08(B)(4). (Doc. 9, Ex. 13).

### FEDERAL HABEAS CORPUS

On August 13, 2015, Petitioner, *pro se*, timely executed the instant Petition for a writ of habeas corpus raising the following grounds for relief:

> **GROUND ONE**: In the course of law the Ohio Constitution allows all persons to be in comity of the Federal Laws of Fair Representation by the Fourth Amend. U.S. Const.; Fifth Amend. U.S. Const.; Sixth Amend. U.S. Const. By the effect of the State of Ohio Art. I section 10 note 13. Effective Counsel. In the use of the Art. The citizen is allowed to be certain the effective counsel has gave fair interview and investigation of the allegations and in the decision to trial or plea its to the best advantages of the appellant. The lack of professionalism and expertise cause wrongful imprisonment with a sentence by no evidence other than police reports of camera and eye sight of two persons in a position known as missionary style with the victim stating the victim cut the victim self purposively. All known allegation happened at one time, one place, in one action for concurrent sentencing of known criminal actions of misdemeanors of the 180 days of incarceration at the best in incarcerated time sentence [sic].
>
> **GROUND TWO**: Fair Trial was denied by the use of allegations not known to exist by the court other than the word of mouth created by the Office of the Prosecutor. The Office presented no evidence other cooperation established for the period of the company of the victim and the appellant. The forty five minutes were not enough to support allegations and the use of hearsay is not law in the State of Ohio. Due process was to allow the appellant the use of the facts of evidence there are none to allow the defense or the defendant to be tried upon the effective counsel stood moot and the allegations stand as cause for the imprisonment without evidence. Equal Protection is not allowed as the hearsay trial is apparent by the lack of any expert to certain the facts of

evidence of the allegations. The article of law to support ground two are Art. 10 Note 34. Fair Trial; Due Process; Equal Protection. [sic]

**GROUND THREE**: Evidence by accords of the comity of USCA Title 18 12 to 17.1 to Criminal Procedure 12 and 16 of Ohio Criminal Law Handbook 2014-1 allow the office of the Prosecutor must have the evidence to sustain any and all allegations with the expert to determine the evidence is valid and not that fabricated. In the procedure of the law the use for the evidence to be provided by Criminal Procedure 12(b)(40 USCA Title 18 Federal Rules of Criminal Procedure Rules 12 to 17.1 and Rule 16 of the USCA Title 18 Federal Rules of Criminal Procedure Rules 12 to 17.1 for Rule 16(a)(1)(A)(C)(D) comity to Criminal Procedure 12(E) Notice of by the prosecuting attorney of the intention to use evidence and Criminal Procedure 12(E) Notice of by inspection (B)Right to copy or photograph (1) there is no evidence listed for the allegations of attempt 2923.02/Rape 2907.02; Felonious assault 2903.01(A)(2); Kidnapping 2905.01; Robbery 2911.01(A)(1). By the procedure of evidence there is not a condition for rape by 2923.02 attempt/2907.02(A)(2) Sexual Conduct is not evident by the expert to state sex was had or intended. No expert can confirm Felonious Assault 2903.01(A) no medical or surgical report are known to be present. No expert to confirm that the victim did not go from one point to another with the appellant and no one can determine detainment in the terms of kidnapping for over a period of eight hours. There is no proof of restraint of liberty other than the victim stating in fear victim called 911. Possession of the phone is questionable as the victim cut the victim self and gave the phone to the appellant to make it appear the victim was robbed. The victim is intelligent enough to know a depleted community and purposively was with appellant. Lost interest and call the Police to assure the victim were to leave. [sic]

(Doc. 1).

## JURISDICTIONAL ISSUES

*Procedural Default*

Procedural default occurs when a petitioner fails to fairly present his claims in a federal constitutional context to the highest state court. *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). Federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the petitioner's] failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Lundgren v. Mitchell*, 440 F.3d 754 (6th Cir. 2006).

A habeas petitioner may fail to obtain consideration of a claim by a state court in two scenarios, either: (1) he failed to fairly raise the claim before the state courts while state remedies were still available, or (2) he failed to comply with a state procedural rule which prevented the state courts from reaching the merits of the petitioner's claim. *Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977). In either of these scenarios, the claim is procedurally defaulted and may not be considered by the federal court on habeas review. *Seymour v. Walker*, 224 F.2d 542, 550 (6th Cir. 2000).

As to the first type, a petitioner may procedurally default his constitutional claim by failing to fairly present it to the highest state court and to all appropriate state courts prior to that through the state's "ordinary appellate review procedures." *O'Sullivan*, 526 U.S. at 847. In Ohio, "one complete round of the State's established appellate review process" means a defendant must fairly present his constitutional claims on the record to the trial court, the court of appeals, and the Supreme Court of Ohio on direct appeal. *Caver v. Straub*, 349 F.3d. 340, 346 (6th Cir. 2003)(quoting *O'Sullivan*, 526 U.S. at 845). Fair presentation requires that the claims must be presented at the first available opportunity, *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994), unless the petitioner can prove some external factor was the cause of his failure and prejudice resulted. *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

As to the second type of default – i.e. noncompliance with a state procedural rule, the court conducts a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

1. The Court determines whether there is a procedural rule applicable to the claim at issue, and whether the petitioner in fact failed to follow it;

2. The Court then determines whether the state courts actually enforced their procedural sanction;

7

3. The Court then decides whether the state's procedural forfeit is an "adequate and independent ground" on which the state can rely to foreclose federal review; and

4. Finally, in order to avoid default, the petitioner can demonstrate that there was "cause" for him to neglect the procedural rule, and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Demonstrating "cause" requires a petitioner to "show that 'some objective factor external to the defense' prevented the petitioner's compliance with a state procedural rule." *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Demonstrating prejudice requires a petitioner to show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *U.S. v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

A procedural default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The Supreme Court has held that such an inquiry requires a petitioner "supplement[] a constitutional claim with a 'colorable showing of factual innocence.'" *Id.* at 495 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell*, 428 U.S. 465, 492–93 (1976)).

Ground One

In ground one, Petitioner challenges the effectiveness of his trial counsel. (Doc. 1, at 4). However, beyond this broad challenge the Court struggled to determine what actions the Petitioner found to be ineffective. Apparently, Petitioner believed his counsel to be ineffective

8

because he did not get the charges reduced to misdemeanors with a maximum potential period of incarceration of 180 days. (Doc. 1, at 4-5).

Regardless of the alleged claim for relief, it has been procedurally defaulted because Petitioner failed to raise the issue in his direct appeal. The failure to do so results in a waiver of those claims under *res judicata*. *O'Sullivan*, 526 U.S. at 848; *Caver*, 349 F.3d at 346; *State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982). Petitioner did not raise known issues in his direct appeal contrary to the doctrine of *res judicata* and the highest state court was unable to review the merits of these issues due to his failure. *Res judicata* has long been held to be a state procedural bar with the effect that claims not raised on direct appeal will be dismissed. *See State v. Perry*, 226 N.E.2d 104 (Ohio 1967). *Res judicata* is a "firmly established and regularly followed" state practice on which to foreclose federal review of a constitutional claim. *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *see also Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001). Thus, Petitioner's first ground for relief is procedurally defaulted.

Petitioner has not asserted cause and prejudice to excuse this procedural default; accordingly the Court recommends grounds one of the Petition be dismissed as procedurally defaulted.

*Non-Cognizable Claims*

The Court will not have jurisdiction over Petitioner's claims for purposes of habeas corpus review if they do not "challenge the legality of his custody" based on a "violation of the Constitution or law or treaties of the United States." 28 U.S.C. § 2254. Indeed, "[t]he writ of habeas corpus is not available to remedy errors of only state law." *Smith v. Morgan*, 371 F. App'x 575, 582 (6th Cir. 2010) (citing 28 U.S.C. § 2254(a)); *see also Norris v. Schotten*, 146 F.3d 314, 328 (6th Cir. 1998) ("[a] claim based solely on an error of state law is not redressable through the federal habeas process.") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

9

Importantly, merely asserting a state law error violates the Federal Constitution is not sufficient to justify jurisdiction. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010).

To the extent grounds two and three are challenging his conviction as against the manifest weight of the evidence under state law, this is a non-cognizable argument. *See Tibbs v. Florida*, 457 U.S. 31, 45 (1982); *State v. Thompkins*, 78 Ohio St. 3d 380, 386, 389 (1997) (finding that sufficiency of the evidence and weight of the evidence are not synonymous legal standards). Any argument that Petitioner's conviction was against the manifest weight of the evidence fails as non-cognizable. However, construing Petitioner's claims broadly, the Court will also undertake a merits analysis of his claims under the sufficiency of the evidence standard.

### STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005). An application for habeas corpus cannot be granted for a person in custody pursuant to a state conviction unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). A court may grant habeas relief if the state court arrives at a conclusion that is contrary to a decision of the Supreme Court on a question of law, or if the state court decides a case differently than did the Supreme Court on a materially indistinguishable set of facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

The appropriate measure of whether a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not

10

merely erroneous or incorrect. *Williams*, 529 U.S. at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000). To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

*Sufficiency of the Evidence*

The standard for sufficiency of evidence is: "whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*. Consistent with the deference given to the trier of fact's resolution of conflicts in evidence, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).

As such, the reviewing court is not permitted to reweigh evidence or in any way substitute its own opinion for that of the trier of fact. *United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). "[T]he *Jackson* inquiry does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (emphasis in original). Due process is satisfied as long as such

11

evidence is enough for a rational trier of fact to make a permissible inference of guilt, as opposed to a reasonable speculation that the petitioner is guilty of the charged crime. *Newman v. Metrish*, 543 F.3d 793, 796-97 (6th Cir. 2008).

Further, it is important to note the double deference applicable; first, the deference accorded to the trier of fact's verdict by *Jackson*, and second, the deference to the state court's consideration of the verdict under AEDPA. *See Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008); *see also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (finding even if a rational trier of fact could not have found petitioner guilty, the habeas court must defer to the state appellate court's sufficiency determination so long as it is reasonable). "[T]he *Jackson v. Virginia* standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'" *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Fifth District Court of Appeals summarized the evidence in support of the State's case as follows:

> In his argument on appeal, Brown contends the testimony provided by T.L. was not credible because there were critical flaws in her testimony. Brown does not elucidate in his appellate brief as to what he contends were the critical flaws. A review of the evidence presented shows the convictions for attempted rape, kidnapping, felonious assault, aggravated robbery, and possession of cocaine were supported by the sufficient evidence and were not against the manifest weight of the evidence.
>
> T.L. testified that she went into the basement with Brown, but Brown's sexual advancements were not welcome. She resisted, but he held her and put a knife to her throat. She testified she was able to call 9–1–1 while Brown was holding her. The 9–1–1 call center received an "open line" call and because of the 9–1–1 call, two police officers were dispatched to the house where the cell phone was located. T.L. testified Brown discovered her cell phone after she dialed 9–1–1. He took her cell phone and put it in his pocket. The police officers arrived on the scene and heard T.L. call to them from the basement. They entered the basement and found Brown on top of T.L. The point of view camera, the recording of which was played for the jury, supported the police officers' testimony as to the scene.

> Upon the search of Brown by the police officers, the officers discovered a knife, a change purse with cocaine, and T.L.'s cell phone. When asked how Brown came into possession of T.L.'s cell phone, Brown said on the point of view camera recording that he had been in possession of T.L.'s cell phone ever since they were driving around Alliance in T.L.'s van. Brown's version of events do not follow the evidence because without possession her cell phone, T.L. could not have made the 9–1–1 call from the basement. T.L.'s testimony corroborates the evidence presented by the State. The jury in this case found T.L. to be credible.
>
> Brown's convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. Brown's first Assignment of Error is overruled.

(Doc. 9, Ex. 9, at 7-9).

Upon review of the evidence presented and the applicable law, the Court finds sufficient evidence exists to uphold all of Petitioner's convictions. For example, Petitioner holding T.L. in a bear hug, threatening her with a knife, grabbing her buttocks, straddling her, and the finding of a knife and T.L.'s phone in Petitioner's possession all support his convictions. Not only were these facts testified to by T.L., but they were also corroborated by police officers, video evidence, and a 9-1-1 call. Furthermore, Petitioner does not provide any evidence to refute the state's case beyond challenging T.L.'s credibility; however, the jury already concluded T.L.'s testimony was credible and it is not the place of this Court to overturn such determinations. *See Cavazos v. Smith*, -- U.S. --, 132 S.Ct. 2, 6-7 (2011). In light of this evidence, a rational trier of fact could find Petitioner guilty beyond a reasonable doubt and the state appellate court's application of the law was objectively reasonable. Therefore, the Court recommends denying the Petition.

### CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Petition be dismissed as time-barred.

s/James R. Knepp II
United States Magistrate Judge

13

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).